UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael Tobin,

    Plaintiff,

v.                                                                  Civil Action No. 2:19–cv–213-cr-jmc

Michael Touchette,
Centurion of Vermont LLC,

    Defendants.

# REPORT AND RECOMMENDATION
(Doc. 8)

Michael Tobin, a Vermont inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights by failing to provide adequate healthcare for his HIV and Hepatitis C. (Doc. 5 at 3.) Specifically, Tobin claims that Defendants' delay in treating his Hepatitis C caused permanent scarring of his liver. (*Id.* at 21–22, 26.) He further asserts that Defendants failed to keep his HIV medication in stock. (*Id.* at 26.) He names as Defendants Michael Touchette, former Commissioner of the Vermont Department of Corrections (DOC)[1], and Centurion of Vermont, LLC, a private entity that provides medical services to inmates in DOC custody. (Doc. 5 at 1; Doc. 8 at 10 n.3.) Tobin seeks injunctive, declaratory, and monetary relief. (Doc. 5 at 6–7, 25.)

---

[1] Since the filing of this suit, Michael Touchette has stepped down as Commissioner of the DOC. As Touchette's successor has not yet been appointed, under Federal Rule of Civil Procedure 25(d), the Commissioner of the Vermont DOC is automatically substituted for Touchette with respect to the official-capacity claims brought by Tobin.

Presently before the court is Defendants' unopposed Motion to Dismiss Tobin's Complaint. (Doc. 8.) For the reasons set forth below, I recommend that Defendants' Motion to Dismiss (Doc. 8) be GRANTED.

## Background

In his Complaint, Tobin broadly alleges that he was denied proper medical treatment of his HIV and Hepatitis C. (Doc. 5 at 3.) He was diagnosed with HIV in 1992 (*id.* at 17), which developed into "full[-]blown AIDS" in 2003–04, at which time he was also diagnosed with Hepatitis C (*id.* at 20). He states that "the VT Medical Board ordered VT DOC to keep AIDS medicines on hand," but that Defendants failed to keep his prescribed medication in stock. (*Id.* at 21, 26.)

Tobin also alleges that, at the end of 2013, a doctor recommended a medication called Harvoni to treat his Hepatitis C. (*Id.* at 28.) He states that he submitted numerous "sick call slips for over a year" requesting the treatment. (*Id.*) He claims that, at one point, a prison nurse asked, "Why are you so pushy about getting this [H]ep[atitis] C treatment when you already have a terminal [d]isease?" (*Id.*; *see also id.* at 22.) Tobin alleges that he was "finally granted Harvoni for 90 days" in July 2015. (*Id.* at 22; *see also id.* at 21, 26, 28.) In October 2015, blood work showed that his Hepatitis C was "dormant" or "cured." (*Id.* at 22.) However, Tobin alleges that he sustained permanent scarring of his liver as a result of the delayed treatment. (*Id.*; *see also id.* at 26, 28.)

Tobin seeks a declaration that Defendants' "rule, law, [and] policy violations caused injury" and violated his constitutional rights. (*Id.* at 25.) He also seeks

"every equitable injunction the law provides for HIV [and] Hep[atitis] C patients['] treatment" (*id.* at 6), as well as injunctions "to address all inmate health needs" and to "stop all actors from the perpetration of discrimination [and] retaliation" (*id.* at 25). Finally, Tobin requests $1,000,000 in compensatory damages and $10,000,000 in punitive damages from each defendant. (*Id.* at 6–7, 25.)

## Analysis

### I. Standard of Review

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Id.* at 558. Because Tobin is representing himself, in addition to accepting his factual allegations as true, the court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam).

**II.    42 U.S.C. § 1983**

Tobin brings his claims pursuant to 42 U.S.C. § 1983. Under § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide

4

relief to victims if such deterrence fails." *Id.* The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead, it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Tobin alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

## III. Exhaustion Under the Prison Litigation Reform Act (PLRA)

Defendants assert that Tobin failed to exhaust his administrative remedies because the Complaint alleges only that he filed grievances requesting Hepatitis C treatment in 2014. (Doc. 8 at 3.) Defendants argue that Tobin "does not provide support for his assertion that he exhausted administrative remedies in 2019 or related to his HIV treatment." (*Id.* at 4.) Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion requires inmates to comply with and complete the prison grievance procedures in place at the institution to which they are confined.

5

*See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). Moreover, the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA is "not a jurisdictional predicate," but rather "failure to exhaust is an affirmative defense." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). Because it is an affirmative defense, the burden lies with the defendant "to demonstrate nonexhaustion"; it is "not [the] [p]laintiff's burden to plead exhaustion with particularity." *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y. 2015); *see also Jones*, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."). Accordingly, the court should only grant a motion to dismiss on failure to exhaust grounds where "nonexhaustion is evident on the face of the plaintiff's complaint." *Preterotti v. Souliere*, Civil Action No. 2:16–cv–72–wks–jmc, 2016 WL 7971319, at *3 (D. Vt. Dec. 28, 2016); *see also Morgan v. Ward*, 1:14–cv–7921–GHW, 2016 WL 427913, at *4 (S.D.N.Y. Feb. 2, 2016) (collecting cases); *Lewis v. Havernack*, Civil Action No. 9:12–CV–0031 (GLS/DEP), 2013 WL 1294606, at *4 (N.D.N.Y. Mar. 28, 2013) ("The exhaustion defense is one that is not particularly well-suited for resolution [on] a motion to

dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred.").

Here, Tobin's failure to exhaust administrative remedies is not apparent on the face of his Complaint. (*See* Doc. 5.) Despite his assertion that "this kind of violation does not require the exhaustion element of any inmate claims," the Complaint states that Tobin filed numerous grievances. (*Id.* at 9; *see also id.* at 23.) Defendants argue that he alleges only that he filed grievances requesting Hepatitis C treatment in 2014 (Doc. 8 at 3), and "does not provide support for his assertion that he exhausted administrative remedies in 2019 or related to his HIV treatment" (*id.* at 4). However, Tobin claims that he filed "request forms, medical request slips, and grievances," which "brought forth that the VT Medical Board ordered VT DOC to keep [HIV/]AIDS medicines on hand." (Doc. 5 at 21.) Moreover, it is not evident on the face of the Complaint that he did not file any grievances after he received Hepatitis C treatment in July 2015, as Defendants suggest. After stating that "[i]t took over 18 months for [Defendants] to administer medically necessary medicine to treat and cure [his] Hep[atitis] C," he asserts that he "reported these acts of negligence" and "all evidence is available on request." (*Id.*) Tobin also broadly alleges that "[e]very attempt to resolve was exhausted." (*Id.* at 23.) Although these allegations are vague, inferring nonexhaustion would effectively invert the burden placed on defendants to prove nonexhaustion as an affirmative defense. Because nonexhaustion is not clear from the face of the Complaint, the Defendants' failure-to-exhaust argument is meritless.

7

## IV. Claims for Injunctive and Declaratory Relief

Tobin seeks a declaration that Defendants' "rule, law, [and] policy violations caused injury" and violated his constitutional rights. (Doc. 5 at 25.) He further requests "every equitable injunction the law provides for HIV [and] Hep[atitis] C patients['] treatment" (*id.* at 6), as well as injunctions "to address all inmate health needs" and to "stop all actors from the perpetration of discrimination [and] retaliation" (*id.* at 25). Although Defendants do not address Tobin's claims for equitable relief in their Motion to Dismiss, the court nevertheless considers the issue of standing with respect to those claims *sua sponte*. *See Plante v. Dake*, 621 F. App'x 67, 69 (2d Cir. 2015) ("Because the standing issue goes to this Court's subject[-]matter jurisdiction, it can be raised *sua sponte*." (internal quotation marks omitted)).

While actions for damages against officials in their official capacities must be dismissed, *see Brandon v. Holt*, 469 U.S. 464, 471 (1985), a claim for injunctive relief to prevent a continuing violation of federal law may nevertheless survive. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155–56, 159 (1908)). However, Tobin has not alleged that there is a continuing violation occurring. Thus, he lacks Article III standing to pursue such relief.

"[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be

8

a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To meet the constitutional minimum of standing to seek injunctive relief, Tobin must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). This requires a showing of "both [1] a likelihood of future harm and [2] the existence of an official policy or its equivalent." *An v. City of New York*, 16 Civ. 5381 (LGS), 2017 WL 2376576, at *2 (S.D.N.Y. June 1, 2017) (alterations in original) (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)).

Tobin's Complaint fails to establish standing on the first prong. A future harm is sufficiently likely if "[t]he injury or threat of injury" is "both real and immediate, not conjectural or hypothetical." *Shain*, 356 F.3d at 215 (alternation in original) (internal quotation marks omitted). A plaintiff seeking injunctive or declaratory relief must show "a sufficient likelihood that he [or she] will again be wronged in a similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (alteration in original) (quoting *Lyons*, 461 U.S. at 111). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . ." *Lyons*, 461 U.S. at 102 (second alteration in original) (internal quotation marks omitted); *see also Deshawn E. by Charlotte E. v.*

9

*Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy [standing's] injury requirement . . . .").

Here, Tobin avers that, at some point, Defendants "failed to keep [HIV/AIDS] medications available" (Doc. 5 at 26), but he does not allege that such medication shortages have or will recur. Similarly, he claims that Defendants delayed treatment of his Hepatitis C from late 2013 to July 2015. (*Id.* at 21–22, 28.) However, he does not allege that Defendants have subsequently delayed his Hepatitis C treatment or that they are likely to do so again in the future. On the contrary, he states that his Hepatitis C is now "cured." (*Id.* at 22.) As such, any threat of future injury is speculative, and mere reference back to these incidents is insufficient to establish standing to seek the broad declaratory and injunctive relief Tobin requests. In addition, although he asks the court to "stop all actors from the perpetration of discrimination [and] retaliation" (*id.* at 25), Tobin does not allege in his Complaint that he was discriminated or retaliated against. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element [of constitutional standing]." (second alteration in original) (internal quotation marks omitted)). Finally, to the extent Tobin requests prospective relief on behalf of other inmates, he lacks standing to do so. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The [Article] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the

10

plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action . . . ." (internal quotation marks omitted)). Accordingly, I recommend Tobin's claims for injunctive and declaratory relief be dismissed.

## V. Official-Capacity Claims for Money Damages

Defendant Touchette also moves to dismiss Tobin's claims against him in his official capacity. (Doc. 8 at 4–5.) Section 1983 allows suit against "persons." State officers sued in their official capacity are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against that official but rather is a suit against the official's office."); *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Accordingly, Defendant Touchette in his official capacity is not a "person" under § 1983 and Tobin's claims against him must be dismissed.

In addition, the Eleventh Amendment[2] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of immunity by Congress. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). This protection also extends to suits for money damages against state officials in their official capacity. *See Brandon*, 469 U.S. at 471. The State of Vermont has not waived its Eleventh Amendment sovereign immunity. In

---

[2] The Eleventh Amendment bars federal suits against state governments by citizens of another state or foreign country as well as by a state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

11

fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979). Consequently, Tobin's claims against Defendant Touchette in his official capacity is barred.[3]

## VI.   Individual-Capacity Claims for Money Damages

Defendant Touchette further argues that Tobin's claims against him in his individual capacity should be dismissed for lack of personal involvement. (Doc. 8 at 5–6.) "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016). However, supervisory officials may not be held liable merely because they hold positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere linkage in the prison chain of command is insufficient to implicate [prison officials] in a § 1983 claim." (internal quotation marks omitted)).

---

[3] To the extent that the DOC is a party to this suit, and given its status as a state agency, any claims brought against it are also barred by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 100 (finding that agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity); *see also Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Neither a state nor one of its agencies . . . is a 'person' under § 1983." (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998))).

In order to prevail on a § 1983 cause of action against an individual, a plaintiff must establish some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Thus, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Tobin's Complaint does not allege any facts from which the court can infer that Touchette was personally involved in the alleged constitutional violations. Beyond being named as a party, Touchette's name does not appear in the text of the Complaint. Tobin does not allege that Touchette himself caused the shortage of HIV/AIDS medication, delayed his Hepatitis C treatment, or otherwise directly participated in any unlawful action. He does not aver that Touchette had a policy or custom of delaying Hepatitis C treatment or not keeping HIV/AIDS medications in stock. In fact, Tobin does not even contend that Touchette was personally aware of the alleged constitutional violations. *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011) (stating that defendants must become aware of the alleged unconstitutional acts while they are ongoing and capable of being remedied). Thus, because Tobin fails to establish a connection between Touchette and the alleged

unconstitutional conduct, Tobin's claims for damages against Touchette in his individual capacity should be dismissed for lack of personal involvement.

## VII. Centurion's § 1983 Liability

Lastly, Centurion argues that Tobin fails to state a claim against it because he does not show that a policy or custom promulgated by Centurion caused the allegedly inadequate medical care he received. (Doc. 8 at 7–9.) As a general matter, an employer cannot be held liable for the acts of its employees under the tort theory of respondeat superior in suits brought under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The Second Circuit has held that "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (second alteration in original) (internal citations omitted) (quoting *Monell*, 436 U.S. at 691); *see also Cochran v. CCA-LAC Med. Dep't*, No. 1:06-CV-116, 2007 WL 431118, at *2–3 (D. Vt. Feb. 5, 2007). "A policy or custom for purposes of 42 U.S.C. § 1983 may be explicit or may be inferred by constitutional violations that are so 'persistent and widespread' that they 'practically have the force of law.'" *Zamani v. Nassau Cty.*, 14-CV-5606 (JFB)(SIL), 2015 WL 9943257, at *6 (E.D.N.Y. Dec. 16, 2015) (quoting *Davis v. City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013)).

14

In this case, it is arguable that Centurion is more than a mere private corporation, since it provides medical care to prisoners on behalf of the State of Vermont. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided.").[4] But regardless of whether Centurion is considered a private corporation or a state actor, Tobin still must allege that his inadequate medical care was caused by an action taken pursuant to an official policy or custom promulgated by Centurion. *Monell*, 436 U.S. at 691. His Complaint fails to do so.

Tobin asserts that "[i]t took over 18 months" for "the medical care provider" to provide proper medication to treat his Hepatitis C. (Doc. 5 at 21; *see also id.* at 22 ("Centurion Medical (of Vermont LLC) failed to administer timely treatment, and caused significant damage.").) He also submits that the DOC's "contracted prisoner medical plan providers" were responsible for "lapses in AIDS medicines." (*Id.* at 23.) However, these allegations do not give rise to an inference that it was Centurion's policy or custom to delay inmates' treatment or fail to keep inmates' medication in stock. Rather, Tobin's complaint "concerns only allegedly unconstitutional conduct to which *he* was subjected." *Villafane v. Sposato*, CV 16-

---

[4] Defendants readily admit that Centurion should be considered a state actor in this regard and argue that Centurion should therefore be shielded by sovereign immunity. (Doc. 8 at 9–10.) Because Tobin has failed to allege that his delayed and inconsistent Hepatitis C and HIV/AIDS treatment, respectively, were the result of an official policy promulgated by Centurion, it is unnecessary to evaluate this argument at this time.

15

3674 (JFB) (AKT), 2017 WL 4179855, at *18 (E.D.N.Y. Aug. 22, 2017) (emphasis added) (internal quotation marks omitted). Accordingly, I recommend that Tobin's claims against Centurion be dismissed.

## VIII. Leave to Amend

A *pro se* plaintiff should ordinarily be granted the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted). Here, it is not clear that Tobin can state a viable federal claim, "but [the Second] Circuit's precedent encourages giving [him] another opportunity." *Montpelier v. Green Mountain Care*, Case No. 2:19-cv-84, 2019 WL 5102715, at *3 (D. Vt. Oct. 11, 2019). Accordingly, I recommend that the court grant Tobin leave to amend his Complaint.

Tobin is advised that an Amended Complaint, if filed, will supersede and completely replace the original Complaint. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Accordingly, an Amended Complaint, if filed, must include all of Tobin's factual allegations in their entirety and must set forth all the claims Tobin has against all defendants and all the relief he seeks; reference back to the original Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont. *See* Fed. R. Civ. P. 8(a); L.R. 15(b). Equally important, an Amended Complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10.

In the event Tobin elects not to file an Amended Complaint, I recommend dismissal of all claims for the reasons set forth in this Report and Recommendation.

## Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Doc. 8) be GRANTED.

Dated at Burlington, in the District of Vermont, this 15th day of July 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).